UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------- x

MELVYN KAUFMAN,

                    Plaintiff,

        - against -                          MEMORANDUM AND ORDER

JUDITH S. KAYE, in her capacity             Civil Action No.
as Chief Justice of the Court of            04-CV-3494 (DGT)(MDG)
Appeals of the State of New York
and A. GAIL PRUDENTI, in her
official capacity as Presiding
Justice of the Appellate
Division of the Supreme Court of
the State of New York, Appellate
Division, Second Judicial
Department,

                    Defendants.

------------------------------------------------- x

TRAGER, J.

        Plaintiff Melvyn Kaufman ("plaintiff") brought this suit

against Judith S. Kaye, in her administrative capacity as Chief

Judge of the Court of Appeals of the State of New York, and A.

Gail Prudenti, in her official capacity as Presiding Justice of

the Supreme Court of the State of New York, Appellate Division,

Second Judicial Department (collectively "defendants"), seeking a

declaration that the system by which appeals are assigned to

justices in the Supreme Court of the State of New York, Appellate

Division, Second Judicial Department ("Second Department")

violates the Due Process and Equal Protection clauses of the

Fourteenth Amendment.  Plaintiff also seeks an injunction

requiring the New York State Legislature to establish a new

system of assigning appeals in the Second Department. Plaintiff further seeks a judgment vacating the decisions and the Second Department's imposition of sanctions against him and directing a new hearing in each of his cases. Defendants move to dismiss plaintiff's claims for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). For the following reasons, defendants' motion is granted.

## Background

Plaintiff is a resident of Mamaroneck, New York and lives in a gated community known as Edgewater Point. Complaint ("Compl.") ¶ 18. Edgewater Point properties are encumbered by a number of restrictive covenants, and the community is governed by a homeowner's association, the Edgewater Point Property Owners' Association ("EPPOA"), which enforces those covenants. Id. ¶¶ 19, 20. Plaintiff has lived in Edgewater Point for a number of years and has complied with the restrictive covenants, as have most of his neighbors. Id. ¶ 23.

According to plaintiff, in recent years, a number of properties have been sold to a new type of owner who have acquired wealth and influence "during the recent period of corporate excesses and illegal financial schemes." Id. ¶ 24. Plaintiff claims that his nouveau riche neighbors "decided that they were not bound by the restrictive covenants and could ignore

them." Id.  Initially, plaintiff requested that the EPPOA
enforce the covenants because the property owners' non-compliance
"negatively effected plaintiff and his properties." Id. ¶¶ 25,
26.  When the EEPOA refused, plaintiff "commenced actions against
both the EEPOA and other individual property owners on Edgewater
Point who were violating the restrictive covenants." Id. ¶ 28.
Plaintiff filed at least seven complaints[1] in New York State
Court against various of his neighbors and entities including the
Village of Mamaroneck, the Office of Building Inspector and the
State of New York.  Id. ¶¶ 29, 93.

Plaintiff claimed that certain of his neighbors violated the
restrictive covenant prohibiting the homes in Edgewater Point
from being used for business purposes (1) by renting out their
house to tenants, see Kaufman v. Fass, 302 A.D.2d 497, 756
N.Y.S.2d 247 (2003) and (2) by allowing their parents to live in
a house they owned in the community rent-free.  See Kaufman v.
Kehler, 305 A.D.2d 636, 759 N.Y.S.2d 765 (2003).  Plaintiff also
claimed that one of his neighbors defamed him.  See Kaufman v.
Farris, 293 A.D.2d 654, 740 N.Y.S.2d 627 (2002).  Plaintiff's
claims against New York State, the Village of Mamaroneck and the

---

[1]    These cases were captioned Kaufman v. Vill. of
Mamaroneck (2 cases apparently bore this caption), Kaufman v.
Office of Bldg. Inspector, Kaufman v. Farris, Kaufman v. Fass,
Kaufman v. Kehler and Kaufman v. State of New York.  See Compl.
¶¶ 38, 93.  According to his complaint, plaintiff also has a
number of other cases pending in New York State Supreme Court.
See id. ¶ 94.

Office of the Building Inspector alleged fraud and sought revocation of the building permits issued to his neighbors.  See Kaufman v. State of New York, 18 A.D.3d 504, 794 N.Y.S.2d 665 (2005); Kaufman v. Office of Bldg. Inspector, 295 A.D.2d 349, 743 N.Y.S.2d 880 (2002).  The New York Supreme Court dismissed each of these cases under N.Y. C.P.L.R. § 3211.  Id. ¶ 31.

Plaintiff appealed each of these decisions and, in one case, filed two appeals.  Id. ¶ 32, 93.  Once plaintiff perfected[2] his appeals, the cases were assigned to four or five judge appellate panels in the Second Department.  Id. ¶ 34, 41.  Plaintiff claims that the selection of appellate panels were manipulated by certain justices so that they could sit on the panels hearing plaintiff's appeals.[3]  Id. ¶¶ 4, 49.  Plaintiff further alleges that these justices were biased against him and wanted him to lose his appeals.  Id. ¶¶ 49, 50, 81, 82.  Plaintiff did, in fact, lose each of his appeals.  Id. ¶ 52.

Plaintiff's allegations of bias appear to be based on the "inappropriate conduct that was exhibited by [the] Justices"

_____

[2]     In New York State Court, an appellant perfects his appeal by filing a record on appeal and a brief.  Compl. ¶ 36.

[3]     In his complaint, plaintiff points out that two justices, Justice Krausman and Justice Adams, sat on four of the five panels hearing his appeals and another justice, Justice Crane, sat on three of the five panels.  Id. ¶ 47.  Since plaintiff filed his complaint, three more of his appeals have been heard, and Justice Adams sat on each panel.  See Letter from Patrick K. Munson (plaintiff's attorney) to the court, dated April 6, 2005.

4

during the oral arguments of two of plaintiff's appeals and the fact that plaintiff lost his appeals "[d]espite the strong factual and legal basis for overturning the orders of the court below." Id. ¶¶ 50, 51. During the arguments, plaintiff claims that the justices "made abusive and derisive comments specifically about plaintiff which were totally unrelated to the appeals and also made comments concerning the purported lack of merits of plaintiff's positions in the appeals." Id. ¶ 50. In addition, in one case, plaintiff was personally sanctioned in the amount of $10,000 for pursuing a frivolous appeal, which plaintiff claims was improperly imposed and is evidence of the justices' bias against him. Id. ¶¶ 53-66.

Plaintiff sought permission from the New York Court of Appeals to review the adverse decisions on two of his appeals and the decision to impose sanctions. Id. ¶ 67. The Court of Appeals denied plaintiff's requests. Id. Plaintiff also filed for a writ of certiorari with the United States Supreme Court in one of his cases, but the request was denied. Id. ¶ 69.

Plaintiff claims that the non-random assignment process in the Second Department and the justices' bias against him has deprived him of his due process right to a fair and impartial tribunal. Plaintiff seeks declaratory relief and an order compelling the Second Department to "adopt a public, random, neutral and transparent process for the assignment of appeals to

the panels of justices which hear and determine appeals . . . as required by the Constitution of the United States and the Code of Judicial Conduct of the State of New York." <u>Id.</u> ¶ 9.

## Discussion

### (1)

"The <u>Rooker-Feldman</u> doctrine provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment." <u>Hachamovitch v. DeBuono</u>, 159 F.3d 687, 693 (2d Cir. 1998). <u>Rooker-Feldman</u> applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." <u>Exxon Mobil Corp. v. Saudi Basic Indus.</u>, __ U.S. __, 125 S.Ct. 1517, 1521-22 (2005). <u>Rooker-Feldman</u> "requires that an aggrieved state court litigant must pursue his claims directly in the state appellate court and ultimately to the United States Supreme Court." <u>Thaler v. Casella</u>, 960 F. Supp. 691, 697 (S.D.N.Y. 1997) (citing <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 476 (1983); <u>Rooker v. Fid. Trust Co.</u>, 263 U.S. 413, 415 (1923)). The Supreme Court also noted that a district court does not have jurisdiction where "allegations are inextricably

6

intertwined" with the state court decision in dispute. <u>Id.</u>

In the case at bar, plaintiff's challenge to the process by which justices are assigned to hear cases is potentially distinguishable from his claims that the decisions rendered against him and the sanctions imposed should be vacated.

It is apparent that this court is without the power to overturn the Second Department's decisions or the sanctions against plaintiff. Also, plaintiff has only appealed two of his cases and the sanctions to the New York Court of Appeals and has only filed for a writ of certiorari with the Supreme Court in one case. So long as an avenue for appeal exists in the state court and/or with the Supreme Court, the district court is certainly not the appropriate forum for plaintiff's claims. <u>Thaler</u>, 960 F. Supp. at 697. With regard to the decisions he has appealed, <u>Rooker-Feldman</u> clearly bars this court from reversing or modifying those decisions in any way. <u>Hachamovitch</u>, 159 F.3d at 693. For these reasons, plaintiff's requests to overturn the decisions of the Second Department in his cases are denied for lack of subject-matter jurisdiction.[4]

_____

[4] Even if this court had jurisdiction over plaintiff's claims, he has not sufficiently pled that his due process rights were violated. Plaintiff claims that the justices who repeatedly appeared on his panels were prejudiced against him and plaintiff was, therefore, deprived of his right to a fair and impartial tribunal. In order to be disqualifying, the bias alleged must stem from "non-juridical data," namely, a source outside of a judge's adjudicatory functions. <u>See</u> <u>N.Y. v. Moreno</u>, 70 N.Y.2d 403, 405, 521 N.Y.S.2d 663, 665 (1987). Plaintiff has not

In <u>Feldman</u>, the Supreme Court drew a distinction between a
general challenge to a rule and a challenge to a judgment
applying the rule and held that a district court could have
subject matter jurisdiction over the former.  <u>Feldman</u>, 460 U.S.
at 486.  Therefore, this court does have jurisdiction over
plaintiff's claim that the Second Department's assignment system
generally violates due process because it is not random and can
be manipulated.  However, this claim must be dismissed on the
merits.  In a letter from James Edward Pelzer, the Clerk of the
Court of the Second Department, the assignment process was
described to the plaintiff thus:

> I make up the schedule of sittings that assigns
> the individual Justices to panels and assigns a Reserve
> Justice for each day to hand recusals and <u>ex</u> <u>parte</u>
> applications.  This schedule is prepared some months in
> advance.  Thereafter, the Chief Court Attorney assigns
> appeals to the established panels upon the completion
> of a confidential report by an attorney in our law
> department.

<u>See</u> Comp. ¶ 72.  Plaintiff claims that the fact that cases are
assigned to the specific panel only after the "confidential
report" is issued is unconstitutional because it allows cases to

---

alleged that any of the judges knew anything about him or his
claims outside his papers and the proceedings.  Further, despite
plaintiff's arguments to the contrary, comments critical of or
even hostile to a party or a party's claims during a hearing do
not alone support a challenge of bias.  <u>Liteky v. U.S.</u>, 510 U.S.
540, 555, 114 S.Ct. 1147 (1994)

be assigned to specific justices instead of being randomly
assigned.

It has been repeatedly held that the random assignment of
cases is not necessary to guarantee a party's rights.  Francolino
v. Kuhlman, 365 F.3d 137, 141 (2d Cir. 2004) (finding that
impartiality required by due process "does not depend on the
manner in which [judge] was selected"); U.S. ex rel Monty v.
McQuillan, 385 F. Supp. 1308, 1310 (E.D.N.Y. 1974) ("[D]ue
process does not accord . . . a right to have a judge assigned to
[a] case on a random basis."); see also U.S. v. Simmons, 476 F.2d
33, 35 (9th Cir. 1973) (holding that defendant did not have a
right to random selection of a judge).  "[A] defendant has no
vested right to have his case tried before any particular judge,
nor does he have the right to determine the manner in which his
case is assigned to a judge."  Monty, 385 F. Supp. at 1310.
Therefore, the fact that the Second Department's method of
assigning cases is not necessarily random does not render it
unconstitutional.

Further, even if plaintiff's cases were purposely assigned
to certain judges, the allocation of judges to related cases for
the sake of judicial efficiency is a common and accepted
practice.  See e.g. E.D.N.Y. Local Rule 50.3.  The assignment of
a plaintiff's cases to certain justices is perfectly reasonable
because the justices know the underlying facts of the cases and

can more quickly dispose of a plaintiff's motions.  Therefore, the Second Department's assignment system does not violate due process.[5]

## Conclusion

For the foregoing reasons, defendants' motion is granted and plaintiff's complaint is dismissed in its entirety.  The Clerk of the Court is directed to close this case.

Dated: Brooklyn, New York
      August 11, 2005

                                  SO ORDERED:

                                  _____/s/_____
                                  David G. Trager
                                  United States District Judge

---

[5] In a letter to the court dated April 6, 2005, plaintiff, through his attorney, sought permission to amend his complaint in order to add factual allegations in further support of his claims.  See Letter from Patrick K. Munson (plaintiff's attorney) to the Court, dated April 6, 2005.  Plaintiff claims that Justice Adams appeared on the panels for three more of plaintiff's appeals.  As a non-random assignment of cases does not, without more, violate due process, any amendment would be futile, and permission to amend is, therefore, denied.